## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BILLJCO, LLC, <br><br>                Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br>                Defendant. | Case No. 2:21-cv-00181-JRG <br> (Lead Case) |
| BILLJCO, LLC, <br><br>                Plaintiff, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, ARUBA NETWORKS, INC. <br><br>                Defendants. | Case No. 2:21-cv-00183-JRG <br> (Member Case) |

### HEWLETT PACKARD ENTERPRISE COMPANY'S AND ARUBA NETWORKS, LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND FACTS ......................................................................................1

     A.     HPE and Aruba ..........................................................................................1

     B.     The Accused Products...............................................................................2

     C.     Plaintiff and the Asserted Patents ...........................................................3

     D.     Relevant Third Parties ..............................................................................4

III.    LEGAL STANDARDS.........................................................................................5

IV.    ARGUMENT .......................................................................................................6

     A.     This Action Could Have Been Brought in the Northern District of
            California ..................................................................................................7

     B.     The Private Interest Factors Favor Transfer to the Northern District of
            California ..................................................................................................7

           1.     The Relative Ease of Access to Sources of Proof ........................7

           2.     The Availability of Compulsory Process to Secure Attendance of
                 Witnesses ....................................................................................10

           3.     The Cost of Attendance for Willing Witnesses ...........................11

           4.     All Other Practical Problems That Make Trial Easy, Expeditious,
                 and Inexpensive ..........................................................................13

     C.     The Public Interest Factors Also Favor Transfer ....................................13

           1.     The Local Interest in Having Localized Interests Decided at Home ............13

           2.     The Administrative Difficulties Flowing From Court Congestion ...............14

           3.     The Remaining Public Interest Factors are Neutral .....................15

V.    CONCLUSION ..................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)..................................................................................11

*Adaptix, Inc. v. HTC.*,
   937 F. Supp. 2d 867 (E.D. Tex. Mar. 28, 2013) ......................................................12

*In re Adobe Inc.*,
   823 Fed. App'x 929 (Fed. Cir. 2020)........................................................................15

*Affinity Labs of Tex. v. Samsung Elecs. Co.*,
   968 F. Supp. 2d 852 (E.D. Tex. 2013)......................................................................13

*Aguilar-Ayala v. Ruiz*,
   973 F.2d 411 (5th Cir. 1992) ....................................................................................11

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)...........................................................................7, 15

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
   2015 U.S. Dist. LEXIS 1987 (E.D. Tex. Jan. 7, 2015)..................................*passim*

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
   2018 WL 7140299 (E.D. Tex. Nov. 29, 2018) ...........................................................9

*BillJCo, LLC v. Apple Inc.*,
   Case No. 6:21-cv-00528 (W.D. Tex. May 25, 2021) ..................................................3

*BillJCo, LLC v. Apple, Inc.*,
   Case No. 6:21-cv-528 (W.D. Tex. Sep. 10, 2021).....................................................4

*BillJCo, LLC v.. Cisco Systems, Inc.*,
   Case No. 2:21-cv-181 (E.D. Tex. Aug. 2, 2021) .......................................................4

*BillJCo, LLC v. Cisco Systems, Inc.*,
   Case No. 2:21-cv-181 (E.D. Tex. May 25, 2021).......................................................3

*City of New Orleans Emps. Ret. Sys. ex rel. BP P.L.C. v. Hayward*,
   508 F. App'x 293 (5th Cir. 2013) ...........................................................................6, 9

*In re Cray*,
   871 F.3d 1355 (Fed. Cir. 2017).................................................................................7

*E-Sys. Design, Inc. v. Mentor Graphics Corp.*,
   2018 U.S. Dist. LEXIS 92797 (E.D. Tex. Jun. 1, 2018).......................................5, 14

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009)................................................................5, 7, 10, 11

*In re Hoffman-LaRoche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)...........................................................................10, 14

*Luminati Networks v. Netnut Ltd.*,
    2020 U.S. Dist. LEXIS 248534 (E.D. Tex. Dec. 21, 2020).........................................7

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)..............................................................................5

*Parity Networks, LLC v. Juniper Networks, Inc.*,
    2018 U.S. Dist. LEXIS 227498 (E.D. Tex. Aug. 10, 2018) ......................................8

*In re Samsung Elecs. Co., Ltd.*,
    2 F.4th 1371 (Fed. Cir. 2021) ...............................................................................15

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..............................................................................5

*Uniloc USA v. Apple Inc.*,
    2019 WL 2066121 (W.D. Tex. Apr. 8, 2019)........................................................12

*Viking Techs. v. Assurant, Inc.*,
    2021 U.S. Dist. LEXIS 154161 (E.D. Tex. Jun. 21, 2021) 1........................... *passim*

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................5, 6, 7

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .......................................................................... *passim*

*WiAV Networks, LLC v. 3Com Corp.*,
    2010 WL 11484491 (E.D. Tex. Jul. 15, 2010) ..............................................10, 13

**Statutes**

35 U.S.C. § 1404..................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 45(c)(3)...........................................................................10

## I.     INTRODUCTION

This is a lawsuit against Hewlett Packard Enterprise Company ("HPE"), a company birthed in Northern California, and its Northern California-based subsidiary, Aruba Networks, LLC ("Aruba")[1], where only Aruba products are accused of infringement and the allegations are based on compliance with the iBeacon standard of a third party headquartered in Northern California—Apple Inc. The Northern District of California is at the heart of this case, and the bulk of the discovery will center there. It is the location of Aruba's headquarters, where the accused products were designed and developed, where Aruba's witnesses are located, and where third party, Apple, its documents, and its witnesses are located. Therefore, this case should be transferred to the Northern District of California under 35 U.S.C. § 1404 for the convenience of the parties and witnesses.

## II.    BACKGROUND FACTS

Plaintiff filed its complaint for patent infringement against HPE and its Northern California-based subsidiary, Aruba, on May 25, 2021. Case No. 2:21-cv-00183, Dkt. 1. In the Complaint, Plaintiff alleges that Defendants infringe U.S. Patent Nos. 8,671,804 ("the '804 Patent"), 10,292,011 ("the '011 Patent"), and 10,477,994 ("the '994 Patent") (collectively "Asserted Patents"). *Id.*, ¶ 2. Plaintiff alleges infringement based on access points and beacon devices made by Aruba that use Bluetooth Low Energy ("BLE") protocols and Apple's iBeacon standard. *Id.*, ¶¶ 20, 27-29 (accusing "Instrumentalities implement[ing] certain features of different beacon specifications and protocols including Apple, Inc.'s iBeacon standard").

### A.     HPE and Aruba

The Hewlett-Packard Company originated in a garage during the 1930s in Palo Alto,

---

[1] Plaintiff incorrectly identified Aruba Networks, Inc. as a named defendant. Aruba Networks, Inc. no longer exists as it was converted from a corporation to a limited liability company in October of 2020, before the Complaint was filed.

California, and is one of the founding companies, if not the original founder, of Silicon Valley. In November 2015, the Hewlett-Packard Company separated into two entities, HP Inc. and Defendant HPE. Declaration of Ben Dunsbergen ("Dunsbergen Decl."), Ex. A, ¶ 3. HPE was headquartered in San Jose, California, until its recent relocation to Houston, Texas, in December 2020. *Id.*, ¶ 5.

The infringement allegations in this lawsuit concern products designed, developed, manufactured, and sold by Aruba. *Id.*, ¶ 6. Aruba was founded in Sunnyvale, California in 2002, and acquired by Hewlett-Packard Company in March 2015. *Id.*, ¶ 2. It currently operates as a subsidiary of HPE, with its headquarters in San Jose, California. *Id.*, ¶ 4. Aruba currently employs ███ individuals in Northern California. *Id.*, ¶ 7.

Aruba's research, development, sales, and marketing activities are led from its San Jose, California headquarters. *Id.*, ¶ 8. Although the company operates other offices in U.S. and foreign locations, it has no office in Plano, Texas, as (incorrectly) alleged in the Complaint. *Id.*, ¶ 10; *see also* Case No. 2:21-cv-00183, Dkt. 1, ¶ 7. While there are some HPE sales team members in Plano, they are dedicated to supporting products in HPE's Compute, Storage, and Services lines of business— businesses distinct from and that do not include the Accused Products. Dunsbergen Decl., ¶ 11. Aruba's team relevant to the Accused Products and the allegations concerning those products is not in Texas. *Id.*, ¶¶ 12-18. To the extent that Aruba interfaces with third parties regarding the development of the Accused Products and the specific alleged functionality at the heart of Plaintiff's infringement allegations, those activities occurred in California. *Id.*

### B.    The Accused Products

Plaintiff alleges that certain Aruba access and beacon points that implement the Apple iBeacon standard infringe the Asserted Patents. *See* Case No. 2:21-cv-00183, Dkt. 1, ¶¶ 20, 27-29 (accusing "Instrumentalities implement[ing] certain features of difference beacon specifications and protocols including Apple, Inc.'s iBeacon standard"). In its Complaint, Plaintiff identifies the Aruba 300, 310,

320, and 330 series Access Points, as well as two models of Aruba Beacons (Products JX984A, JX985A), two models of Aruba USB Beacons (Products JW315A, JW316A), and one model of the Aruba Event Beacon (Product JX986A) (collectively, the "Accused Products"). *See id.*, ¶ 27. These access and beacon points were designed, developed, made and sold by Aruba in California, but not in Texas. Dunsbergen Decl., ¶¶ 6, 8-10, 12-18.

In its infringement contentions served on September 15, 2021, Plaintiff purports to chart "HPE Accused Products." *See* BillJCo, LLC's Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions"), Exhibit 1 to the Declaration of R. Prey ("Prey Decl.") (Ex. B), at 3. However, Plaintiff has accused only Aruba products, and none from HPE. *Id.*; *see* Dunsbergen Decl., ¶ 6. The contentions center on Aruba products' alleged use of "BLE (Bluetooth Low Energy) beacon technology to broadcast data packets" in "compliance with the Apple *Proximity Beacon Specification*," and points to iBeacon Data packet fields and content to allegedly explain how the Accused Products infringe. *See* Infringement Contentions at 2; Case No. 2:21-cv-00183, Dkts. 1-7, 1-8, 1-9.

C.    **Plaintiff and the Asserted Patents**

Plaintiff BillJCo appears to be a non-practicing entity, also going by the name of LBX Technologies. Prey Decl., Ex. 2; *see also* Infringement Contentions at 3 (no BillJCo products that practice the Asserted Patents per P.R. 3-1(f) disclosure). It does not appear to have a website, and its "principal place of business" is listed as being at the same residential address as the named inventor of the Asserted Patents, William J. Johnson, in Flower Mound, Texas. Prey Decl., Ex. 2. Mr. Johnson is Plaintiff's only member. *See* Prey Decl., Ex. 3 (*BillJCo, LLC v. Apple Inc.*, Case No. 6:21-cv-00528, Dkt. 1, ¶ 4 (W.D. Tex. May 25, 2021) (identifying Mr. Johnson as the "sole member of BillJCo").)

Plaintiff is asserting the same three patents against HPE and Aruba that it is concurrently asserting against two other technology companies that allegedly use the same beacon technology. *Id.*; Prey Decl., Ex. 5 (*BillJCo, LLC v. Cisco Systems, Inc.*, Case No. 2:21-cv-181, Dkt. No. 1 (E.D.

Tex. May 25, 2021).) Notably, Apple, who upon information and belief is the creator of the iBeacon standard, and concurrently defending a parallel lawsuit in the Western District of Texas, has moved to transfer its case to the Northern District of California under 28 U.S.C. § 1404(a). Prey Decl., Ex. 6 (*BillJCo, LLC v. Apple*, *Inc*., Case No. 6:21-cv-528, Dkt. 26 (W.D. Tex. Sep. 10, 2021).) Cisco Systems Inc., who is currently defending a parallel lawsuit in this Court, also has its principal place of business in San Jose, California, which is within the Northern District of California. Prey Decl., 7 (*BillJCo, LLC v.. Cisco Systems*, *Inc*., Case No. 2:21-cv-181, Dkt. No. 18, ¶ 5 (E.D. Tex. Aug. 2, 2021).)

> ### D.     Relevant Third Parties

Plaintiff's allegations against Aruba's products rely on their alleged compliance with Apple's iBeacon standard, as well as purported use of BLE. Case No. 2:21-cv-00183, Dkt. 1, ¶¶ 27-29. In its companion case against Apple, which Apple has moved to transfer to Northern California, Plaintiff has accused Apple's BLE iBeacon based technology of infringement. *See BillJCo, LLC v. Apple Inc*., Case No. 6:21-cv-528, Dkt. 1 at 6.

Public records indicate that Apple is headquartered in Cupertino, California, which is in the Northern District of California. *BillJCo, LLC v. Apple Inc*., Case No. 6:21-cv-528, Dkt. 26 at 2. Apple's management and primary research and development facilities are also, upon information and belief, in Cupertino. *Id.* at 2-3 (citing Rollins Decl. ¶ 3). Apple has disclosed that the vast majority of its work on designing, developing, and implementing the accused beacon technology takes place in Cupertino. *Id.* at 3 (citing Rollins Decl. ¶¶ 3, 7-9). In its transfer motion, Apple identified its relevant witnesses, all of whom are in the Northern District of California. *Id.* (citing Rollins Decl. ¶¶ 8, 9, 12-14).

The Bluetooth Special Interest Group ("Bluetooth SIG") is the standards organization that oversees the development of Bluetooth standards and the licensing of the Bluetooth technologies. Prey

Decl., Ex. 4; *see also BillJCo, LLC v. Apple Inc.*, Case No. 6:21-cv-528, Dkt. 26 at 7 (citing Huang Decl.). The Bluetooth SIG is in Kirkland, Washington. Prey Decl., Ex. 4. Aruba expects that any evidence from the Bluetooth SIG will be found in Washington, which is its only location. *See id.*

## III.   LEGAL STANDARDS

28 U.S.C. § 1404(a) gives courts the discretion to transfer a civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Under Fifth Circuit law, a motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The purpose of § 1404(a) "is to prevent the waste of time, energy and money and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 2015 U.S. Dist. LEXIS 1987, at *3 (E.D. Tex. Jan. 7, 2015) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Courts first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed, or whether all parties have consented to a particular jurisdiction." *E-Sys. Design, Inc. v. Mentor Graphics Corp.*, 2018 U.S. Dist. LEXIS 92797, at *2-3 (E.D. Tex. Jun. 1, 2018) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). Then, the Fifth Circuit's public and private interest factors are weighed. *Volkswagen I*, 371 F.3d at 203; *Viking Techs. v. Assurant, Inc.,* 2021 U.S. Dist. LEXIS 154161, at *5-6 (E.D. Tex. Jun. 21, 2021) 1. Cases in this district are transferred where the balance of those factors show that another venue is "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The key private interest factors include convenience and costs to parties and third party witnesses, availability of compulsory process, and ease of access to proof. *In re Genentech*, 566 F.3d 1338, 1342-45 (Fed. Cir. 2009); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir.

2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."); *Viking Techs.*, 2021 U.S. Dist. LEXIS 15416, at *12 ("The third private interest factor considers the cost of attendance for willing witnesses. The Federal Circuit has described this factor as being the most important.").[2]

## IV.    ARGUMENT

The center of gravity of this case is unquestionably in the Northern District of California. Plaintiff's Complaint accuses only Aruba products of infringement, and does so on the basis of alleged compliance with a standard created by a third party that is headquartered in California, and that itself has moved to transfer its parallel case to Northern California. *BillJCo, LLC v. Apple Inc.*, Case No. 6:21-cv-528, Dkt. 26. The documents and witnesses relevant to this case are located in California and not in Texas. Aruba's headquarters are in Northern California, and Aruba does not maintain any facilities, design, develop, or manufacture the Accused Products in Texas. Dunsbergen Decl., ¶¶ 4, 7-10.

When analyzing the convenience of a particular venue, courts must look to where witnesses and documents relevant *to this case* are located. *City of New Orleans Emps. Ret. Sys. ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 297-98 (5th Cir. 2013). Here, because the teams and decisionmakers responsible for the design, development, marketing, and/or management of the Accused Products are centrally in California (and not, by contrast, in Texas), and because the infringement accusations rely upon a standard created by a third party headquartered in California (and who itself is seeking transfer of its parallel case to California), the convenience factors support a transfer of venue to the Northern District of California.

---

[2] The plaintiff's choice of venue is not a distinct factor in the analysis. *Volkswagen II*, 545 F.3d at 314-15. Nor is the location of plaintiff's counsel. *Volkswagen I*, 371 F.3d at 206.

## A.        This Action Could Have Been Brought in the Northern District of California

Plaintiff could have brought this action in the Northern District of California because personal jurisdiction and venue are both proper there. *See* § 1404(a); *Volkswagen I*, 371 F.3d at 203. HPE's subsidiary, Aruba, has its headquarters and principal place of business in San Jose, California. *See* Dunsbergen Decl., ¶ 4. The design, development, marketing, and product management of the Accused Products are focused in California. *Id.*, ¶¶ 6-9. Thus, HPE and Aruba are subject to personal jurisdiction in the Northern District of California. *See, e.g.*, *Luminati Networks v. Netnut Ltd.*, 2020 U.S. Dist. LEXIS 248534, at *5 (E.D. Tex. Dec. 21, 2020). Aruba's California headquarters is also a regular and established place of business for purposes of establishing proper venue. *See* 28 U.S.C. § 1400(b); *In re Cray*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017). Thus, this suit could have been—and, indeed, should have been—brought in the Northern District of California.

## B.        The Private Interest Factors Favor Transfer to the Northern District of California

The private interest factors strongly favor transfer to the Northern District of California. These factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

### 1.        The Relative Ease of Access to Sources of Proof

This factor "relates to the ease of access to non-witness evidence, such as documents and physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). Non-witness evidence relating to the alleged infringement in this case is centered in California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566

F.3d at 1345. "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *Auto. Body Parts*, 2015 U.S. Dist. LEXIS 1987, at \*13; *see also Parity Networks, LLC v. Juniper Networks, Inc.*, 2018 U.S. Dist. LEXIS 227498, at \*5 (E.D. Tex. Aug. 10, 2018) (finding that this factor supported transfer when the defendant's relevant sources of proof were in its California headquarters).

In this case, the sources of proof in the Northern District of California include Aruba and third-party Apple. Dunsbergen Decl., ¶¶ 4, 7-9, 13-18. Employees at Aruba's headquarters in San Jose, California, make the decisions regarding product development, management, manufacture, marketing, and sales of the Accused Products. Dunsbergen Decl., ¶ 14. The relevant Aruba witnesses, who are all in California, and their relevant knowledge include:

- Ben Dunsbergen (Vice President of Engineering, Aruba; San Jose, California): knowledge or information of product management, development, design, testing, and/or operation of one or more of the Aruba AP and Beacon Products;

- Deven Patel (AP Hardware Manager, Aruba; San Jose, California): knowledge or information of product management, development, design, testing, and/or operation of one or more of the Aruba AP and Beacon Products;

- Phillip Carranco (Regulatory Compliance Manager, Aruba; San Jose, California): knowledge or information of product management, development, design, testing, and/or operation of one or more of the Aruba AP and Beacon Products; and

- Steve Brar (Senior Director, Product Marketing, Aruba Global Marketing; Roseville, California): knowledge or information of product marketing and advertising of one or more of the Aruba AP and Beacon Products.

*Id.*, ¶ 18. Aruba's documents relevant to this case are located in California. *Id.*, ¶¶ 15-17. Thus, this factor favors transfer. *See, e.g.*, *Parity Networks*, 2018 U.S. Dist. LEXIS 227498 at \*5.

This Court faced a similar circumstance in *Auto. Body Parts*. *See* 2015 U.S. Dist. LEXIS 1987.

There, "the bulk of the relevant evidence regarding the creation of the design" of the accused automotive products was in Michigan, while there were "absolutely no documents or other physical evidence located in the Eastern District of Texas." *Id.* at *15; *see also B/E Aerospace, Inc. v. Zodiac Aerospace*, 2018 WL 7140299, *7-8 (E.D. Tex. Nov. 29, 2018) (recommending transfer to California because the "bulk of the sources of proof, including documents and witnesses, are located on the West Coast," and the "bulk of the relevant evidence will likely come from the defendant accused of making and selling."). The same is true here: discovery on the research, development, design, operation, marketing, and sale of the accused products will come from Northern California—both from Aruba *and* third parties, including Apple. HPE's office in Plano will not be the focus of any discovery. Dunsbergen Decl., ¶¶ 11-12. Even with HPE's headquarters located in Texas (but outside this District), the Plano-based sales staff is responsible primarily for products in HPE's lines of business, none of which are at issue in this litigation, and not Aruba's products. *Id.* The ■ employees in this district with any connection to the Accused Products have a peripheral one at best, and more significantly, support and report to Aruba teams in California. *Id.* The Accused Products were not developed in Texas and decisionmakers overseeing those products are located outside of Texas. *Id.*, ¶¶ 6, 13-18 Thus, as in *Auto. Body Parts*, because there is no evidentiary connection to this District, this factor strongly favors transfer. *See* 2015 U.S. Dist. LEXIS 1987 at *15. Moreover, the inquiry for this factor focuses on where documents *relevant to this case* are located. *City of New Orleans*, 508 F. App'x at 297 (affirming transfer to where "the relevant documents . . . could be found," despite presence of documents "of questionable relevance" in the transferor forum) (quotations omitted); *Volkswagen II*, 545 F.3d at 315 (analyzing only location of documents "relating to the accident" at issue). There are no such documents in Texas. Dunsbergen Decl., ¶¶ 13-18.

Further, in addition to third-party Apple, who is located in California, Aruba expects that the

Bluetooth SIG, located in the state of Washington, will have relevant documents given that Plaintiff accuses Aruba's alleged use of iBeacon *and* BLE technology in this case. *See BillJCo, LLC v. Apple Inc*., Case No. 6:21-cv-528, Dkt. 26 at 7 (citing Huang Decl.); Prey Decl., Ex. 4. Because Apple's relevant evidence is in California, and because the Bluetooth SIG is in Washington, there are no unique, relevant sources of proof in this District. *Id.*

## 2. The Availability of Compulsory Process to Secure Attendance of Witnesses

This factor "generally favor[s] transfer when more non-party witnesses reside within the proposed venue than in the current venue." *WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 11484491, at *3 (E.D. Tex. Jul. 15, 2010) (citing *Volkswagen II*, 545 F.3d at 316). "A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses." *Auto. Body Parts*, 2015 U.S. Dist. LEXIS 1987, at *16 (citing Fed. R. Civ. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii)).

The availability of compulsory process factor favors transfer because HPE and Aruba are unaware of any relevant third-party witnesses who would be within the subpoena power of this district. *See Genentech*, 566 F.3d at 1345 (compulsory-process factor "weighs in favor of transfer" where "no witness [] can be compelled to appear in the Eastern District of Texas"); *In re Hoffman-LaRoche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009) (transfer favored when transferee forum has absolute subpoena power over a greater number of third party witnesses). The Northern District of California has subpoena power over third-party Apple, and thus has greater ability to compel witnesses on relevant technical topics for both deposition and trial. *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer[.]"); *see Viking Techs.,* 2021 U.S. Dist. LEXIS 15416, at *11 ("Party witnesses are generally deemed to be willing witnesses, so this factor is directed more to third-party witnesses."). In its own motion to transfer, Apple

has identified at least five witnesses in the Northern District of California who would testify about, among other things, the iBeacon technology at the core of Plaintiff's infringement contentions against the Aruba products. *See BillJCo, LLC v. Apple Inc*., Case No. 6:21-cv-528, Dkt. 26 at 9 (citing Rollins Decl. ¶¶ 8, 9, 12-14). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Since the Northern District of California is the center of this dispute where third-party witnesses have been identified, and there are no third-party witnesses in the Eastern District of Texas, this factor strongly weighs in favor of transfer.

### 3.      The Cost of Attendance for Willing Witnesses

The convenience of witnesses is the "single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343. The Fifth Circuit's "100-mile" rule is applied to "determine the convenience of the transferee district to the witnesses and parties." *Auto. Body Parts*, 2015 U.S. Dist. LEXIS 1987, at *17-18; *see also Volkswagen II*, 545 F.3d at 317 ("[A]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment."); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (noting that in requiring party employees to travel for trial, the parties would likely incur significant expenses for airfare, meals, lodging, as well as losses in productivity from time spent away from work).

The accused products were developed by Aruba in California. Dunsbergen Decl., ¶¶ 6, 13-14. Accordingly, the key witnesses relevant to research, design, development, operation, marketing, and sales of the accused products are in Northern California. *Id.* Given that third-party Apple witnesses are in also located in Northern California, it would be far less costly for most, if not *all*, anticipated witnesses to attend a trial in the Northern District of California, rather than the

Eastern District of Texas.[3]

Although the inventor of the asserted patents is in Texas, that does not change the fact that this factor favors transfer. That a single inventor is in Texas does not outweigh the burden on the many witnesses located in Northern California. *See Adaptix, Inc. v. HTC*., 937 F. Supp. 2d 867, 875 (E.D. Tex. Mar. 28, 2013) (granting a motion to transfer to Northern California, even though the "former [Plaintiff] President and CEO, as well as one of the inventors of the patented technology, both . . . live in Plano, Texas."); *see also Viking Techs*., 2021 U.S. Dist. LEXIS 154161, at *13 (granting a motion to transfer where only "one witness" would be "significantly more inconvenienced" by traveling to the transferee venue). When "a greater number of party and non-party witnesses . . . would find the Northern District of California [] a clearly more convenient venue," it favors a transfer. *Adaptix*, 937 F. Supp. 2d at 876.

Requiring travel to Eastern District of Texas would also impact (and perhaps even more so here, during a global pandemic) Defendants' businesses in Northern California, just as the willing witnesses in *Auto. Body Parts* "would incur substantial expense from traveling and would disrupt Ford's ordinary business." 2015 U.S. Dist. LEXIS 1987, at *18; *see also Volkswagen II*, 545 F.3d at 317 ("[A]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment."). And just as this Court found in *Auto. Body Parts*, the present plaintiff does "not share this concern" because it does not "make, manufacture, or sell any products." 2015 U.S. Dist. LEXIS 1987, at

---

[3] Prior cases relating to Apple's iBeacon technology have been transferred from Texas to the Northern District of California based on the presence of relevant witnesses in California. *Uniloc USA v. Apple Inc*., 2019 WL 2066121, at *3-4 (W.D. Tex. Apr. 8, 2019); *see also BillJCo, LLC v. Apple Inc*., Case No. 6:21-cv-528, Dkt. 26 at 11.

*19. Thus, this factor strongly favors transfer.

### 4.        All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive

The last private interest considerations relate to the ease, expense, and expediency of trial. This case is in its early stages, given that discovery has yet to begin. Additionally, Defendants timely moved to transfer. As a result, no practical considerations weigh against transfer. Further, as described above, Apple, who is the creator of the iBeacon standard and concurrently defending a parallel lawsuit in the Western District of Texas, has moved to transfer its case to the Northern District of California under § 1404(a). *See BillJCo, LLC v. Apple Inc.*, Case No. 6:21-cv-528, Dkt. 26.

### C.        The Public Interest Factors Also Favor Transfer

The public interest factors include "(1) the local interest in having localized interests decided at home; (2) the administrative difficulties flowing from court congestion; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. These factors also favor transfer to the Northern District of California.

### 1.        The Local Interest in Having Localized Interests Decided at Home

The "district court is to consider 'those actually affected—directly and indirectly—by the controversies and events diving rise to a case" and transfer is appropriate where "there is 'no relevant factual connection' to the present venue." *WiAV*, 2010 WL 11484491, at *5 (quoting *Volkswagen II*, 545 at 318). "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (quotations omitted).

As mentioned above, the research, development, design, marketing, and sales of the accused products all occur in Northern California. Dunsbergen Decl., ¶¶ 6, 13-14. Since Aruba is headquartered in Northern California, employing ██████ people there, the public interest is higher in Northern California. *Id.*, ¶¶ 4, 7; *see also E-System Design,* 2018 U.S. Dist. LEXIS 92797, at *16 ("[T]he public interest is greater in the [transferee venue] where [defendant] is headquartered and where nearly 1,000 of its employees reside.") Thus, where, as here, the accused products were "developed and tested" predominantly in the Northern District of California (and not at all in Texas), and because this suit "calls into question the work and reputation of several individuals residing" in that district, the Northern District of California's interest in this matter is "self-evident." *In re Hoffman-LaRoche, Inc.* 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Thus, this factor strongly weighs in favor of transfer.

### 2.    The Administrative Difficulties Flowing From Court Congestion

This public interest factor "concerns the speedy and efficient administration of justice." *Viking Techs.*, 2021 U.S. Dist. LEXIS 154161, at *15. This Court's docket of active patent cases is much more congested than the Northern District of California's current docket of patent cases. As of the date of this motion, this Court has 484 pending patent cases, which are being presided over by 11 judges. Prey Decl., Ex. 8. In contrast, as of the same date, the Northern District of California reported 276 pending patent cases being presided over by 18 judges. *Id.*, Ex. 9. Since January 1, 2021, 343 patent cases have been filed in this District, while only 147 patent cases have been filed in the Northern District of California in that same timeframe. *Id.*, Exs. 10-11. Patent cases in the Northern District of California also historically have a shorter time to dismissal than this District—a median of 175 days for the Northern District of California versus 272 days in this District since 2009. Prey Decl., Exs. 12-13. All of these data points show that the Eastern District

of Texas is more congested than the Northern District of California, and that transfer of this case to the latter would help minimize burden on this Court and enhance judicial efficiencies.

Plaintiff may point to this Court's practice of setting an early trial date as a factor favoring transfer. But the Federal Circuit has stated repeatedly that a fast-paced prospective schedule should not be assigned significant weight in the transfer analysis. *See, e.g. In re Apple*, 979 F.3d at 1344 ("The district court misapplied the law to the facts of this case by relying too heavily on the scheduled trial date. We have previously explained that a court's general ability to set a fast-paced schedule is not particularly relevant to this factor."); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380-81 (Fed. Cir. 2021) ("[W]e cannot say that the prospective speed with which this case might be brought to trial is of particular significance in these cases."); *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020) ("The [court congestion] factor concerns whether there is an appreciable difference in docket congestion between the two forums. . . .Nothing about the court's general ability to set a schedule directly speaks to that issue.").

Thus, this factor weighs in favor of transfer.

### 3.    The Remaining Public Interest Factors are Neutral

The remaining public interest factors are neutral. Both this Court and the Northern District of California are familiar with patent law and there are no choice of law issues.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the case be transferred to the Northern District of California.

Dated: October 1, 2021                         Respectfully submitted,

                                               By: */s/ Rose Cordero Prey*
                                               Rose Cordero Prey
                                               Elana B. Araj
                                               Kathryn E. Albanese

GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: preyr@gtlaw.com
Email: araje@gtlaw.com
Email: albanesek@gtlaw.com

Melissa R. Smith
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendants Hewlett Packard Enterprise Company and Aruba Networks, LLC***

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that on September 29, 2021, counsel for Defendants discussed the issues raised herein with counsel for Plaintiff but was unable to reach an agreement. Plaintiff indicated that it opposed the Defendants' requested relief.

*/s/ Melissa R. Smith*
Melissa R. Smith

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 1st day of October 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*
Melissa R. Smith

17

